UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROL VORHIES,<br><br>*Plaintiff*,<br><br>v.<br><br>RANDOLPH TOWNSHIP BOARD OF EDUCATION,<br><br>*Defendant*. | Civil Action No. 16-587<br>(JMV) (MF)<br><br><u>OPINION</u> |

**John Michael Vazquez, U.S.D.J.**

This case concerns allegations that Defendant Randolph Township Board of Education violated Plaintiff's rights under the Family Medical Leave Act ("FMLA") and the New Jersey Law Against Discrimination ("NJLAD"). This matter comes before the Court by way of Motion for Summary Judgment filed by Defendant Randolph Township Board of Education and Cross-Motion for Partial Summary Judgment filed by Plaintiff Carol Vorhies. D.E. 62, 65. The Court reviewed all submissions made in support and in opposition to the motions[1] and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part** and Plaintiff's Cross-Motion for Partial Summary Judgment is **DENIED.**

---

[1] Defendant's brief in support of its motion for summary judgment is referred to as "Def. Br." (D.E. 62-2); Plaintiff's brief in opposition to Defendant's motion and in support of her cross-motion for partial summary judgment is referred to as "Pl. Br." (D.E. 65-4); Defendant's reply brief in support of its motion for summary judgment and in opposition to Plaintiff's cross-motion is referred to as "Def. Reply" (D.E. 66); and Plaintiff's reply brief in support of her cross-motion is referred to as "Pl. Reply" (D.E. 70).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background[2]

Plaintiff Carol Vorhies was a tenured school nurse employed by Defendant Randolph Township Board of Education at Randolph High School before retiring in 2016. DSOMF ¶ 1.[3]

---

[2] The background facts are drawn from Defendant's Statement of Material Facts Not in Dispute ("DSOMF"), D.E. 50-1, and Plaintiff's response ("Pl. Resp. to DSOMF"), D.E. 52; Plaintiff's Statement of Material Facts Not in Dispute ("PSOMF"), D.E. 60-1, Defendant's response ("Def. Resp. to PSOMF"), D.E. 61-2; and Defendant's Supplemental Statement of Material Facts Not in Dispute ("Def. Supp. SOMF"), D.E. 61-1; the Affidavit of Brett Pohlman and its accompanying exhibits ("Pohlman Aff."), D.E. 62-1, 62-6, and the Certification of Jeffrey D. Ullman and its accompanying exhibits ("Ullman Cert."), D.E. 65-2, 65-3.

In responding to Defendant's statement of material facts, Plaintiff failed in many instances to include supporting citations to the record for paragraphs that she denied. *See, e.g.*, Pl. Resp. to DSOMF ¶¶ 15-17, 26, 28, 33, 35, 38, 40, 44, 51, 52, 55-57. So too in responding to Plaintiff's statement of material facts, Defendant failed in many instances to include supporting citations to the record for paragraphs that it denied. *See, e.g.*, Def. Resp. to PSOMF ¶¶ 5, 8, 16-17, 19-20, 24, 28-29, 31, 37, 43, 44. Local Civil Rule 56.1 requires an opponent of a motion for summary judgment to provide a responsive statement of material facts. If an opponent denies any paragraphs in her responsive statement, she must "cit[e] to the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1(a). A court may deem paragraphs that do not comply with requirements set forth in Local Civil Rule 56.1 as admitted. *See, e.g., 7-Eleven, Inc. v. Sodhi*, No. 13-3715, 2016 WL 3085897, at *2 n.5 (D.N.J. May 31, 2016) (concluding that paragraphs in which defendants "disagreed" without support to the record were deemed undisputed).

However, Defendant also filed a supplemental statement of facts. *See* Def. Supp. SOMF. This supplemental statement provided clear supporting citations to the record. As a result of the supplemental statement's clear citations, for the most part, the Court does not need to sift through the record to see if Defendant's "denied" responses to Plaintiff are actually in dispute. Therefore, the Court will not deem Defendant's "denied" responses to Plaintiff's statement of material fact that lack appropriate citations to the record (Def. Resp. to PSOMF ¶¶ 5, 8, 16-17, 19-20, 24, 28-29, 31, 37, 43, 44) as admitted.

In contrast, Plaintiff did not provide a supplemental statement of facts. Plaintiff provides almost no supporting citations to many of the facts relating to the NJLAD claim (including Plaintiff's work evaluations and experiences upon return to work from FMLA leave). As a result, the Court will deem Plaintiff's "denied" responses to Defendant's statement of material fact pertaining to Plaintiff's work evaluations and experiences upon return to work from FMLA leave that lack appropriate citations to the record (Pl. Resp. to DSOMF ¶¶ 38, 40, 44, 51, 52, 55-57) as admitted.

[3] In their respective statements of material facts, both Defendant and Plaintiff cite to the Complaint

2

Defendant states that on September 19, 2013, a staff member noticed alcohol on Plaintiff's breath while at work.[4] *Id.* ¶ 3. Pursuant to Defendant's District Policy 3218 regarding employees' substance abuse, Defendant immediately sent Plaintiff for breath and blood testing at First Primary Care. DSOMF ¶¶ 4-5. Plaintiff's blood alcohol concentration at 8:54 AM was .040. *Id.* ¶ 5.

After testing, Plaintiff returned to the high school and met with the school's principal and vice principal, who told Plaintiff that she was being sent home because of the test's positive result. D.E. 62-6, Ex. D at 64:1-19. Defendant's superintendent, Dr. David Browne ("Browne"), emailed Plaintiff that afternoon directing Plaintiff to meet with him the next morning or as soon as possible. D.E. 65-3, Ex. D at 1. Plaintiff did not meet with Browne the following day, but the reasons why the meeting did not occur are subject to disagreement between the parties, which is addressed below. Pl. Resp. DSOMF ¶ 6; DSOMF ¶ 7.

On September 23, 2013, Plaintiff voluntarily admitted herself into the Recovery Institute of South Florida for treatment, where she was treated by Dr. Antonio DeFilippo. DSOMF ¶ 10; PSOMF ¶ 13. On September 25, 2013, Plaintiff applied for medical leave under the FMLA through Dr. DeFilippo. DSOMF ¶ 11; PSOMF ¶ 11. Plaintiff's FMLA application identified her condition as "major depressive disorder." PSOMF ¶ 11. Defendant approved Plaintiff's request for medical leave through December 19, 2013 under a plan in which Plaintiff would maintain

---

(D.E. 1). *See* DSOMF ¶¶ 1-2; PSOMF ¶¶ 3-4. However, in all instances in which one party cites to the Complaint, the opposing party does not dispute the relevant fact and the fact is not material. As a result, the Court will let the fact stand as undisputed.

[4] Defendant cites to medical notes, D.E. 62-6, Ex. B, to support this proposition. DSOMF ¶ 3. However, the medical notes do not state when, where, or who detected the odor of alcohol on Plaintiff's breath. Plaintiff does not directly dispute paragraph 3. Pl. Resp. to DSOMF ¶ 3. Since Plaintiff does not dispute the proposition and the fact is not material, the Court will let this fact – and other undisputed, immaterial facts without proper references to the record – stand as undisputed in the interest of judicial efficiency.

benefits, accumulated sick days would be used for paid leave, and any additional leave would be unpaid. DSOMF ¶ 11. On October 22, 2013, Dr. DeFilippo wrote a letter to Browne informing him that Plaintiff remained in his care but did not have a set discharge date yet. DSOMF ¶ 12; PSOMF 21.

On November 15, 2013, Dr. DeFilippo wrote a letter to Browne, stating that Plaintiff had successfully completed the treatment and should be "cleared to return to work." DSOMF ¶ 13; PSOMF ¶¶ 22-23. That same day, Browne did not clear Plaintiff to work but instead requested additional information from Dr. DeFilippo about Plaintiff's "condition, treatment, and/or rehabilitation" due to the "safety-sensitive nature" of Plaintiff's position as a school nurse. DSOMF ¶ 14. On November 18, 2013, Dr. DeFilippo responded that Plaintiff "was being treated medically for her behavioral health medical condition," had completed the program, and was cleared to return to work with no restrictions. DSOMF ¶¶ 16-17.

On November 19, 2013, the Board resolved to restore Plaintiff to her position "pending medical clearance by a Board-designated physician." DSOMF ¶ 18; PSOMF ¶ 26. Defendant arranged for Plaintiff to be seen by Dr. Mario Finkelstein on December 11, 2013 for a "fitness for duty examination." DSOMF ¶ 19; PSOMF ¶ 27.[5] Dr. Finkelstein conducted both a psychiatric and substance abuse evaluation, and then submitted a report dated December 18, 2013. PSOMF ¶¶ 34-35. Dr. Finkelstein was "not able to make a clear diagnosis" as to whether Plaintiff had an alcohol related disorder and requested more information from Plaintiff's treatment center. D.E. 62-6, Ex. K at 8. Dr. Finkelstein opined that since Plaintiff works as a school nurse in a "safety

---

[5] Many of Plaintiff's asserted facts in her statement of material facts regarding her appointment with Dr. Finkelstein are actually legal arguments or conclusions of law. *See, e.g.* PSOMF ¶¶ 28, 29, 31, 37. Under Local Rule 56.1, statements of material facts "shall not contain legal argument or conclusions of law." The Court does not consider paragraphs 28, 29, 31, and 37 as facts.

sensitive position," "she should not return to work until clarification of this matter is achieved." *Id.* After reviewing additional information and again meeting with Plaintiff, Dr. Finkelstein sent Browne a letter on February 27, 2014 recommending that Plaintiff be allowed to return to work as a full-time nurse. D.E. 62-6, Ex. M at 2.

After receiving Dr. Finkelstein's letter, Defendant required Plaintiff to sign a "Last Chance Agreement" on February 28, 2014 before returning to work. DSOMF ¶ 31; PSOMF ¶ 41. The Last Chance Agreement required Plaintiff to "attend a twelve[-]step program for at least a year; continue with mental health treatment for at least a year; submit to random breathalyzer testing for a year; [and] be re-evaluated by Dr. Finkelstein in 6 months." DSOMF ¶ 32. Plaintiff executed the Last Chance Agreement on February 28, 2014 and returned to work as a high school nurse that day. DSOMF ¶ 33; PSOMF ¶ 42.

At the end of the 2013-2014 school year, Defendant withheld Plaintiff's salary increment "due to her appearing at work under the influence of alcohol." DSOMF ¶ 42. In April 2015, Plaintiff was issued a letter of reprimand for failing to have students' health care plans registered and for her "tone/demeanor toward co-workers and the administration staff." *Id.* ¶ 43. Defendants had Plaintiff evaluated throughout the 2014-2015 school year by staff, and a resulting report indicated that as a result of various incidents, Plaintiff was "Partially Effective." *Id.* ¶¶ 44-45. The report "noted [P]laintiff's disorganization with student's medical records, student's medication, health care plans and a failure of [P]laintiff to attend any continuing education." As a result of the evaluations and report, Defendant withheld Plaintiff's salary increment at the end of the 2014-2015 school year. *Id.* ¶ 46. Defendant set forth approximately five additional issues, reprimands, or incidents involving Plaintiff during the 2015-2016 school year that were unrelated to the September 19, 2013 incident. *Id.* ¶¶ 47-52. Plaintiff retired on October 1, 2016. *Id.* ¶ 53.

5

The parties disagree as to the following facts. Most significantly, the parties dispute whether Plaintiff was "suspended" following the incident on September 19, 2013. DSOMF ¶ 6; Pl. Resp. to DSOMF ¶ 6. Defendant claims that "Plaintiff was immediately suspended because of her positive results on the breathalyzer and told to meet with the Superintendent the next working day." DSOMF ¶ 6 (citing D.E. 62-6, Ex. D at 64:12-18, 81:23-25). Defendant cites to two portions of Plaintiff's December 23, 2016 deposition in support of its claim. *Id.* First, when asked what the principal said to Plaintiff during their meeting on September 19, 2013, Plaintiff answered "I guess she said that I had a positive result, she was sending me home." *Id.* at 64:14-18. Second, Defendant cites to a portion of the deposition during which Defendant's counsel asked Plaintiff whether a certain unidentified attorney had represented her in any matters. *Id.* at 81:16-17. Plaintiff responded, "[w]ell, he's representing me in this matter that we're talking about." *Id.* at 81:21-22. Defendant's counsel responded, "[h]e's represented you in this – in what matter?" *Id.* at 81:23-24. Plaintiff responded, "[I]n me being suspended from work." *Id.* at 81:25. Defendant has provided no formal documentation of a suspension.

Plaintiff, on the other hand, indicates that "[n]o suspension of any kind was imposed. No meeting between plaintiff and Superintendent Browne occurred prior to the commencement of her leave. Superintendent Browne averred that plaintiff 'took a leave of absence from the District *for a medical issue*' beginning on September 19, 2013." Pl. Resp. to DSOMF (citing D.E. 65-3, Ex. D, Ex. E) (emphasis in original). In Browne's undated Certification, Browne did not mention Plaintiff being suspended, but did mention that "[o]n or about September 19, 2013, [Plaintiff] took a leave of absence from the District for a medical issue." D.E. 65-3, Ex. E ¶ 3. Further, in emails between Browne and Plaintiff following the test results in which Browne requested to meet or talk with Plaintiff, Browne did not mention "suspension." D.E. 65-3, Ex. D.

The parties also dispute *why* Plaintiff did not meet with Browne on or soon after September 20, 2013, as Browne had requested. PSOMF ¶ 8; Def. Supp. SOMF ¶ 6. Plaintiff stated that the meeting "never occurred, as [Plaintiff] was not at work on September 20, 2013, a Friday, due to illness." PSOMF ¶ 8 (citing D.E. 65-3, Ex. D). Defendant contends that Plaintiff's explanation is "contrary to Plaintiff's sworn deposition testimony" and stated that "Plaintiff did not meet with the Superintendent ... because her union directed her not to." Def. Supp. SOMF ¶ 6 (citing D.E. 62-6, Ex. D at 76:4-25) ("So [the union person] must have called me that day ... Because she said don't meet with [Browne]. I didn't contact the union. She called me.").

The parties also disagree about the conditions of Plaintiff's FMLA leave. Plaintiff states that "in granting leave, the defendant did not require [Plaintiff] to obtain or submit a fitness for duty certification in order to be restored to employment" and "did not otherwise condition [Plaintiff's] rights to be restored to employment at the conclusion of her FMLA leave." PSOMF ¶¶ 16-17 (citing D.E. 62-6, Ex. E). Defendant "denies" these assertions but provides no citations to any documents or explanation in accordance with Local Civil Rule 56.1. Similarly, Plaintiff and Defendant disagree as to the number of days Plaintiff was compensated for during her period of leave. PSOMF ¶¶ 43-44; Def. Resp. to PSOMF ¶¶ 43-44; DSOMF ¶ 27; Pl. Resp. to DSOMF ¶ 27. Defendant again "denies" these assertions but does not provide any supporting citations pursuant to Local Civil Rule 56.1.

Plaintiff and Defendant also provide different accounts of Plaintiff's work evaluations throughout Plaintiff's decades at the school. *See* DSOMF ¶¶ 36-40; Pl. Resp. to DSOMF ¶¶ 36-40. Broadly speaking, Defendant portrays Plaintiff's work evaluations as containing "worrisome issues," which Plaintiff claims to be "a misleading and false characterization of the facts." *Id.*

7

### 2. Procedural History

On February 3, 2016, Plaintiff filed her Complaint, asserting claims for (1) FMLA violations (an interference claim under 29 U.S.C. § 2615(a)(1) and a retaliation claim under 29 U.S.C. § 2615(a)(2)) and (2) an NJLAD violation. D.E. 1. Plaintiff claimed that Defendant's actions, including demanding that Plaintiff submit to a medical examination by, and release medical records to, a Board-approved physician, requiring the "Last Chance Agreement," and withholding a salary increment, were retaliatory and violated the FMLA and NJLAD. *Id.* ¶ 31. Defendant answered the Complaint and asserted forty-nine separate defenses. D.E. 4.

On April 16, 2019, Defendant filed its motion for summary judgment. D.E. 62. On May 20, 2019, Plaintiff filed her cross-motion for partial summary judgment as to her FMLA interference claim. D.E. 65.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence

and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

The standard does not change when parties file cross-motions for summary judgment. When ruling on cross-motions, "the court must consider the motions independently, and view the evidence on each motion in the light most favorable to the party opposing the motion." *Morro v. DBMG Casino LLC*, 112 F. Supp. 3d 260, 276 (D.N.J. 2015) (internal citations omitted).

### III. ANALYSIS

In support of its motion for summary judgment, Defendant argues that "Plaintiff has not

9

presented any evidence that [Defendant] interfered with her rights under the [FMLA]" and that Plaintiff's evidence "does not support a claim that [Defendant] discriminated against Plaintiff or retaliated against her because of a disability." Def. Br. at 3, 12. Defendant contends that there are no genuine issues of material fact and summary judgment must be granted in its favor. Def. Br. at 24.

Plaintiff, in her cross-motion, seeks partial summary judgment on her FMLA interference claim. Pl. Br. at 21. Plaintiff claims that her evidence proves that "Defendant interfered with and unlawfully burdened Plaintiff's rights under the FMLA." *Id.* at 18. Plaintiff also opposes Defendant's motion for summary judgment. *Id.* at 29-36.

### A. Count One – FMLA Violations

The FMLA affords eligible employees up to twelve weeks of unpaid, job-protected leave for certain health conditions. *Schummer v. Black Bear Distribution, LLC*, 965 F. Supp. 2d 493, 497-98 (D.N.J. 2013). There are two FMLA-based causes of action: FMLA interference claims pursuant to 29 U.S.C. § 2615(a)(1), and FLMA retaliation claims pursuant to 29 U.S.C. § 2615(a)(2). *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009). Plaintiff seeks relief under both. D.E. 1.

#### 1. FMLA Interference Claim – Section 2615(a)(1)

Both parties move for summary judgment on the FMLA interference claim. To succeed on an FMLA interference claim, "a plaintiff must establish that he or she was entitled to and denied some benefit under the FMLA." *Erdman*, 582 F.3d at 508. Both parties rely on the five-part test set forth in *Parker v. Hahneman University Hosp.*, 234 F. Supp. 2d 478, 483 (D.N.J. 2002). Under *Parker*, to establish a *prima facie* case of FMLA interference, a plaintiff must demonstrate the following:

10

> (1) she is an eligible employee under the FMLA, (2) defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) the defendant denied her the benefits to which she was entitled under the FMLA.

*Id.* As to both Defendant's motion for summary judgment and Plaintiff's partial cross-motion, the parties only dispute the fifth element, whether Defendant denied Plaintiff benefits "to which she was entitled under the FMLA." *Id.*

Defendant contends that as a result of Plaintiff's suspension for coming to school under the influence, "Plaintiff was never authorized to return to work before she applied for leave under the FMLA." Def. Br. at 5-6. For that reason and due to Plaintiff's "safety-sensitive" position as a school nurse, Defendant states it "did not infringe on [Plaintiff's] FMLA rights by extending her FMLA leave" to determine her competency after the September 19, 2013 incident and suspension. Def. Br. at 6-7. Defendant argues that there is no "provision of the FMLA or related case law that provides for a pre-leave suspension to be negated if an employee subsequently decides to use the FMLA." Def. Reply at 1.

Plaintiff, in turn, argues that Defendant clearly denied her benefits under the FMLA. Pl. Br. at 20-21. Plaintiff argues that "the right of return – to be restored to the position one held at the time leave was taken – is a primary 'benefit' conferred under the FMLA." Pl. Br. at 21 (citing *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 251-52 (3d Cir. 2014)). Plaintiff states that where, as here, "an employer does not require any fitness certification or doctor's clearance at the time leave is granted" and where, as here, "the employer has no uniformly applied policy requiring such clearance certifications upon return from sick leave generally, the employee need only be able to perform the essential tasks of her position and advise the employer that she is ready and able to resume her employment." Pl. Br. at 21 (citing *Rutherford v. Peoria Pub. Sch. Dist. 150,*

11

228 F. Supp. 3d 848, 849-50 (C.D. Ill. 2017)). *See also* 29 C.F.R. § 825.300(d)(3) ("If the employer will require the employee to present a fitness-for-duty certification to be restored to employment, the employer must provide notice of such requirement with the designation notice."). Plaintiff argues that Defendant denied her benefits to which she was entitled when it refused to timely "reinstate her upon her presentation of a clearance letter from her physician, attesting to her fitness for duty, 'without restrictions.'" *Id.* at 22.

Plaintiff asserts that Defendant's argument fail because she was never actually suspended, as evidenced in part by the lack of a formal record of her suspension. *Id.* at 30. Furthermore, Plaintiff alleges that even if she had been suspended, the suspension "would not have affected her rights under the FMLA." *Id.* at 31. Plaintiff adds that Defendant "cites neither any provision in the FMLA nor in its implementing regulations, nor case law, in support of its claim that the alleged 'suspension' trumps [Plaintiff's] rights under the FMLA[.]" *Id.*

Defendant responds that Plaintiff's right to reinstatement "simply restored her to the status she held prior to her taking FMLA leave, *i.e.* suspended with pay and subject to disciplinary action." Def. Reply at 3. Defendant continues that because Plaintiff "would have been subject to the same conditions whether or not she took FMLA leave, she was not bound by the requirements set forth in 29 C.F.R. § 825.300." *Id.*

As noted, the parties dispute whether Plaintiff was suspended or not immediately following the September 19, 2013 incident. Both sides present sufficient evidence that creates a genuine dispute of material fact. While Plaintiff argues that Plaintiff's alleged suspension is immaterial, the Court disagrees. The Court finds that "reasonable minds could differ as to the import of the evidence," so summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

Therefore, summary judgment is denied as to the FMLA interference claim for both

Plaintiff and Defendant's motions because whether Plaintiff was suspended is a genuine issue of material fact.

### 2. FMLA Retaliation Claim – Section 2615(a)(2)

Defendant moves for summary judgment as to the Plaintiff's FMLA retaliation claim. To succeed on such a claim, a plaintiff must demonstrate that: (1) she took FMLA leave, (2) suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of her FMLA rights. *Erdman*, 582 F.3d at 508. The parties dispute element three: whether the adverse action Plaintiff alleged after returning to work was causally related to Plaintiff's exercise of her FMLA rights.

Plaintiff claims that upon her return to work, Defendant "embarked upon a campaign designed to break her or to force her resignation" including "a stream of negative actions, letters of reprimand, and unsatisfactory evaluations[.]" Pl. Br. at 38, 39. In support of its summary judgment motion, Defendant argues that Plaintiff has not proffered any evidence that Defendant withholding Plaintiff's salary increments or Plaintiff's negative work evaluations are causally related to Plaintiff's utilization of her FMLA leave. Def. Br. at 22. Defendant claims these "adverse employment actions" resulted directly from Plaintiff's misconduct and suspension on September 19, 2013 and many additional incidents that occurred after Plaintiff's return. *Id.* at 18-22.

Since Defendant claims Plaintiff's suspension is one of the reasons for Plaintiff's adverse employment action, the factual dispute over whether Plaintiff was suspended is once again both genuine and material. Therefore, Defendant's summary judgment motion is denied as to the FMLA retaliation claim because whether Plaintiff was suspended is a genuine issue of material fact.

## B. Count Two – NJLAD Violation

Defendant also seeks summary judgment as to its alleged violation of NJLAD. New Jersey enacted the LAD "to protect not only the civil rights of individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace." *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 600 (1993). As a result, the LAD makes it illegal

> [f]or an employer, because of the race, creed, color, national origin, ancestry, age ... *disability* ... of any individual ... to refuse to hire or employ or to bar or to discharge or require to retire ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]

N.J.S.A. § 10:5-12(a) (emphasis added). Plaintiff first claims that she is protected under the LAD because she "suffered from a medically related disability." D.E. 1 ¶ 39. She adds that Defendant acted unlawfully and in a "discriminatory and retaliatory" manner which was "causally provoked by [Plaintiff's] exercise of the rights protected under law and was intended to and did interfere with those rights." *Id.* ¶¶ 40-41.

In opposition to Defendant's motion for summary judgment, Plaintiff refers to her LAD claim as a hostile work environment claim based upon disability. Pl. Br. at 38. Under New Jersey law,

> [t]o prove that harassing workplace conduct amounts to hostile work environment discrimination based on a plaintiff's disability, he or she must demonstrate that the conduct: '(1) would not have occurred *but for* the employee's [disability]; and it was (2) *severe or pervasive* enough to make a (3) *reasonable* [disabled person] believe that (4) the conditions of employment are altered and the *working environment is hostile or abusive.*

*Iko v. Cty. of Middlesex*, No. A-4036-17T1, 2019 WL 2528852, at *7 (N.J. Super. Ct. App. Div. June 20, 2019) (emphasis in original) (citing *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 603, 626 A.2d 445, 453 (1993)). Plaintiff contends "the District first interfered with her rights under the

14

FMLA and then embarked on a campaign designed to break her or to force her resignation." Pl. Br. at 38. Plaintiff claims a jury could reasonably find Defendant's conduct "to have been driven by her handicap,[6] or the [Defendant's] perceptions of it." *Id.*

However, Plaintiff provides no evidence that Defendant's conduct (upon Plaintiff's return to the workplace) "would not have occurred but for" her disability. *Iko*, No. A-4036-17T1, 2019 WL 2528852 at *7. Under a section titled "Work Evaluations," Defendant's statement of material facts laid out numerous instances in which Plaintiff was reprimanded or denied salary increments after returning to work from FMLA leave. *See* DSOMF ¶¶ 42-52. In Plaintiff's response to Defendant's statement of material facts, Plaintiff admitted to eight of Defendant's facts regarding Plaintiff's work evaluations and improperly denied three of the facts. *See* PSOMF ¶ 42-52. For the reasons laid out in note 2, the Court considers paragraphs 44, 51, and 52 in Defendant's statement of material facts undisputed.

Within Defendant's statement of facts about Plaintiff's work evaluations, Defendant explained that Plaintiff's salary increment was withheld at the end of the 2013-2014 school year because of her appearing to work under the influence, DSOFM ¶ 42; that Plaintiff was reprimanded due to her failing to have students' health care plans registered and inappropriately assigning co-workers duties, *id.* ¶¶ 43, 48; that Plaintiff's 2014-2015 salary increment was withheld because Plaintiff received a performance report of "Partially Effective," *id.* ¶ 45; and more. Defendant's facts, which Plaintiff admitted to or which are deemed admitted, provide uncontroverted evidence that Defendant's conduct upon Plaintiff's return to work were unrelated to Plaintiff's handicap.

---

[6] Plaintiff does not specify what her "handicap" is. The Court infers from Plaintiff's reference to "a medically related disability" in her Complaint, D.E. 1 ¶ 39, and from her FMLA application, PSOMF ¶ 11, that she intends to reference her diagnosis of major depressive disorder. In any event, the nature of Plaintiff's disability does not impact the Court's analysis.

15

As a result, there is no genuine dispute of material fact as to the first element of Plaintiff's hostile workplace discrimination claim, and Defendant is entitled to a judgment as a matter of law.

Therefore, Defendant's motion for summary judgment is granted as to Defendant's alleged violation of NJLAD.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (D.E. 62) is **GRANTED in part and DENIED in part** and Plaintiff's Cross-Motion for Partial Summary Judgment (D.E. 65) is **DENIED**. An appropriate Order accompanies this Opinion.

**Date:** January 16, 2020

_____
John Michael Vazquez, U.S.D.J.